UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT A. SMITH,<br><br>                        Plaintiff,<br><br>   v.<br><br>CENTURION MEDICAL, et al.,<br><br>                        Defendants. | Case No. 2:23-cv-01030-RFB-BNW<br><br>**SCREENING ORDER** |

      Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint ("Complaint") under 42 U.S.C. § 1983. ECF No. 7. Plaintiff previously filed a motion for an extension to file the Complaint, together with an application to proceed in forma pauperis. ECF No. 6. The Court accepts the Complaint and denies the motion for an extension as moot. The Court defers consideration of Plaintiff's application to proceed in forma pauperis. Plaintiff has also filed two motions for a preliminary injunction. ECF Nos. 1-1, 4. The Court will first screen the Complaint under 28 U.S.C. § 1915A and then consider Plaintiff's motions for a preliminary injunction.

**I.    SCREENING STANDARD**

      Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. §§ 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States; and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. Id. at 723–24. In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. Id.

Additionally, a reviewing court should "begin by identifying [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id. "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable—like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist—as well as claims based on fanciful factual allegations like fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).

**II.   SCREENING OF COMPLAINT**

In his Complaint, Plaintiff sues multiple Defendants for events that took place while he was incarcerated at High Desert State Prison ("HDSP"). Plaintiff sues Defendants Med. Director McDaniel, Head Provider/Doctor David Rivas, Head of Nursing Jamie Barbara, Senior Correctional Officer Fontes, Sergeant Quinn, Correctional Officer Aden, Correctional Officer Array, Senior Correctional Officer Hill, Smith, and Lopez, as well as John or Jane Doe Defendants. Plaintiff brings three counts and seeks injunctive and monetary relief. The Court will consider each of Plaintiff's claims in turn.

**A.   Count I**

In Count I, Plaintiff alleges that he slipped on a staircase. Sergeant Jarret told other officers to call medical to make sure that Plaintiff received a medical evaluation, but no medical personnel never came. Plaintiff's leg was black and blue from the top of his thigh to the bottom of his foot.

On October 12, 2021, Plaintiff was offered a COVID-19 vaccine, which he initially refused. After the "COVID-19 nursing director" assured Plaintiff that the vaccine was safe, he agreed to receive it. This led to a plethora of complications. While Plaintiff was receiving the vaccine, Officer Array noticed Plaintiff's leg and stated that it looked like he had pulled a muscle.

Plaintiff was placed in chronic care, but he was subsequently removed without explanation. From that time, until August 29, 2023, Plaintiff lost 75 pounds. During this time, Plaintiff missed

multiple medical appointments because of either swelling in his feet or being surprised out of sleep. At some point, Officer Array told Plaintiff that it looked like he had cancer. After Array noticed Plaintiff's leg injury and weight loss, he contacted Officer Hill. But instead of contacting medical, Hill wrote Plaintiff up and refused to give him a cell assignment that would accommodate his medical needs, such as a bottom bunk.

In the section of the Complaint for Plaintiff to state the nature of his case, he writes that he suffered from undiagnosed diabetes for close to a year. He also states that he believes he developed a blood clot in his left leg from the Johnson and Johnson COVID-19 vaccine. Plaintiff has also been diagnosed with a hernia, which went undiagnosed for a year. Plaintiff suffers from tingling sensations in his feet, and his feet often "pop out of joint." Plaintiff also suffers from cramping in his legs and feet. Plaintiff is being denied any further medical care and his medical requests are ignored or delayed.

Based on the allegations in Count I, Plaintiff brings an Eighth Amendment claim regarding his medical care. The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which

prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. State of Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

The Complaint includes allegations about several different medical issues. Some of the details and dates are not clear, but the Court will attempt to understand Plaintiff's allegations and will consider each of the Plaintiff's medical issues in turn.

### 1. Fall Down the Stairs

The Court finds that Plaintiff fails to state a colorable claim of deliberate indifference to a serious medical need based on the failure to treat him after he fell down the stairs. Even assuming that Plaintiff's injuries were sufficient to constitute a serious medical need, Plaintiff does not allege any facts about anyone responsible for the alleged failure to treat him. Plaintiff states that Sergeant Jarret, who is not a Defendant in this case, told officers to contact medical staff, and that medical staff never came. But Plaintiff does not explain which, if any, of the Defendants was responsible for the failure to evaluate his leg injuries.

Plaintiff also appears to allege that while Plaintiff was receiving a COVID-19 vaccine, Defendant Array commented that it looked like Plaintiff had pulled a muscle in his leg. But a pulled muscle would not necessarily constitute a serious medical need. And as this occurred while Plaintiff was receiving medical treatment, it is not clear what Plaintiff believes Array could or should have done about Plaintiff's leg injury. It is not clear from the Complaint whether Plaintiff ever requested medical treatment for his leg or who was responsible for denying any such request.

The allegations in the Complaint do not support that any Defendant was deliberately indifferent to Plaintiff's serious medical need regarding his fall. The Court dismisses this claim without prejudice and with leave to amend. If Plaintiff wishes to bring this claim in an amended complaint, he must allege specific facts to support that he had a serious medical need, and that one or more of the Defendants acted with deliberate indifference to that need.

### 2. COVID-19 Vaccine

The Court finds that Plaintiff fails to state a colorable claim of deliberate indifference to a serious medical need based on his experience with the COVID-19 vaccine. It is not clear whether Plaintiff is attempting to bring a claim based on initially being provided the vaccine, or based on a failure to treat the alleged complications from the vaccine. Plaintiff states that he suffered a plethora of complications from the vaccine.

The allegation that Plaintiff had complications from the vaccine does not, on its own, support a claim of deliberate indifference to a serious medical need. Even when medical personnel act appropriately, complications can occur. Thus, the allegation that Plaintiff suffered complications does not necessarily support that medical personnel did anything wrong, much less that anyone acted with deliberate indifference to Plaintiff's serious medical needs.

The Court dismisses this claim without prejudice and with leave to amend. If Plaintiff wishes to bring this claim in an amended complaint, he must allege specific facts to support that one or more of the Defendants acted with deliberate indifference to Plaintiff's serious medical needs either in providing the vaccine or in treating Plaintiff's subsequent complications.

### 3. Weight Loss

The Court finds that Plaintiff fails to state a claim based on his alleged weight loss. Plaintiff alleges that over the course of roughly two years he lost 75 pounds. Plaintiff also alleges that at some point Defendant Array stated that Plaintiff looked like he had cancer, and that Array contacted Defendant Hill, who wrote Plaintiff up and refused to give him a cell assignment with a bottom bunk. Plaintiff refers to Defendant Array noticing Plaintiff's "leg and weight loss." (ECF No. 7 at 4). But Plaintiff states also states that Array noticed Plaintiff's leg when he received a COVID-19 vaccine in October 2021, prior to the allege weight loss. As such, it is not clear when Plaintiff is alleging that Array noticed his alleged weight loss or when he contacted Hill.

Furthermore, it is not clear what responsibility or ability Array or Hill had to either initiate or prevent medical treatment for Plaintiff. Plaintiff does not allege that he ever sought medical treatment regarding his weight loss or explain why he did not receive medical treatment for his weight loss. The allegation that at some unknown time Array suggested that Hill contact medical personnel regarding Plaintiff's leg and/or weight, and Hill failed to do so, without more, does not support a claim of deliberate indifference to a serious medical need. Plaintiff also alleges that Hill failed to assign Plaintiff to a bottom bunk, but he does not explain the need for a bottom bunk or any negative consequences he faced as a result of not receiving a bottom bunk.

The allegations in the Complaint do not support that any Defendant was deliberately indifferent to Plaintiff's serious medical needs as they relate to his weight loss. The Court dismisses

this claim without prejudice and with leave to amend. If Plaintiff wishes to bring this claim in an amended complaint, he must allege specific facts to support that he had a serious medical need, and that one or more of the Defendants acted with deliberate indifference to that need.

### 4. Other Medical Issues

In the section of the Complaint for Plaintiff to state the nature of the case, Plaintiff alleges that he has suffered from multiple medical issues, including diabetes, a hernia, a blood clot, and tingling and cramping in his feet. Plaintiff alleges that he has not received appropriate treatment for these medical issues, but none of them are mentioned in Count I. Even if the Court were to liberally construe the Complaint as bringing claims based on these allegations, the Complaint fails to state a claim because it does not include any allegations about who is responsible for the alleged failure to provide Plaintiff medical care for these issues. As such, the allegations do not support that any Defendant was deliberately indifferent to Plaintiff's serious medical needs, and the Court dismisses this claim without prejudice and with leave to amend.

### 5. Other Defendants

The Court notes that Plaintiff lists several different medical professionals as Defendants in the Complaint. However, the Complaint does not include any allegations about these individuals. To state a colorable claim against any individual, Plaintiff must allege specific facts showing how that individual was responsible for the alleged constitutional violation. Plaintiff cannot simply allege that he received poor medical treatment and seek damages against medical personnel. Rather, in order to bring a claim against any Defendant, whether medical or otherwise, Plaintiff must allege specific facts showing how each individual Defendant participated in the alleged constitutional violation.

The Court notes that this same issue appears in Counts II and III. Plaintiff does not clearly articulate who is responsible for the alleged constitutional violations, and many of the Defendants named in the Complaint are not mentioned at all in the body of the Complaint. The Court will not discuss this issue further in analyzing Counts II and III. However, in any amended complaint, Plaintiff must clearly state how each individual Defendant was involved in any alleged constitutional violation.

**B. Count II**

In Count II, Plaintiff alleges that the day after he reported his illness to Senior Correctional Officer Fontes, and Nurse Jane Doe, his cell was searched in retaliation. Prison-made wine was found in Plaintiff's cell, and he pleaded guilty to making the wine. As a result, Plaintiff was moved from Level 1 to Level 2, where the incidents described in Count I occurred.

Plaintiff is currently being housed in a "Security Management Unit," because he has refused to house in "un-accommodated cells."[1] Plaintiff's new unit has regular incidents of stabbings, assaults, and drug use. Plaintiff is in constant fear for his safety and well-being because he has diabetes and is getting older. Plaintiff, who has committed to change himself as he nears his parole date, believes that "they" are trying to put him into situations that will cause him to revert to his previous behavior.

Based on these allegations, Plaintiff brings a threat to safety claim under the Eighth Amendment. Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. Id. at 843.

A prisoner seeking a remedy for unsafe conditions does not have to await a tragic event such as an actual assault before obtaining relief. Id. at 845. "An inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue must adequately plead such a violation." Id. at 845-46 (quotations and citation omitted). Plaintiff must plead that

---

[1] Based on the allegations in Counts II and III, it appears that this refers to Plaintiff's refusal to house with other inmates who he considers dangerous or objectionable. (ECF No. 7 at 5-7.)

prison officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." Id. at 846.

The Court finds that Plaintiff fails to state a colorable failure to protect claim under the Eighth Amendment. The Complaint does not include any specific allegations to support that Plaintiff either is, or was, in danger. Plaintiff vaguely alleges that he was moved to a unit where there were stabbings and assaults, but he does not provide any specific allegations about these incidents, or allege any facts to support that he was, or was likely to be, the target of an attack.

Furthermore, Plaintiff does not allege any facts about any Defendants responsible for placing, or keeping, him in this unit. Plaintiff does not allege that he has told any Defendant that there is a serious risk to his safety or that any Defendant is aware of the alleged serious risk to his safety and is ignoring that risk. The Court dismisses this claim without prejudice and with leave to amend. If Plaintiff wishes to bring this claim in any amended complaint, he must allege specific facts supporting that there is, or was, a serious threat to his safety, and that one or more of the Defendants is, or was, aware of the serious threat to Plaintiff's safety and has ignored that risk.

**C. Count III**

In Count III, Plaintiff alleges that he has faced retaliation as a result of grievances that he filed regarding his medical care and his safety and security. Plaintiff initially refused his cell assignment and was placed on "Red Tag" status for 15 days. While on Red Tag status, Plaintiff only received one shower, and that's when the property violation in Count I occurred.[2] Plaintiff was also denied yard, phone, and tier privileges because he refused to accept cellmates that might endanger him. It was during this time that Plaintiff lost 75 pounds.

Case Worker Lopez wanted to move Plaintiff in with an inmate named Duna. Duna claimed in a federal lawsuit that he had been sexually assaulted while in general population and that staff had poisoned him. When Plaintiff agreed to move in with Duna, Lopez told Plaintiff that Duna had been told that Plaintiff had a medical reason for needing a bottom bunk. After Plaintiff moved in with Duna, he found out that Duna did not know that Plaintiff had been assigned to a bottom

---

[2] Although Plaintiff refers to a property violation in Count I, Count I does not appear to include any allegations about a property violation. (ECF No. 7 at 4, 6).

bunk, that Duna had been involved in several violent incidents, and that Duna would talk endlessly and sing to himself.

After Duna was released on parole, officers tried to move an inmate who had been attacked over a drug transaction into Plaintiff's cell. Then they tried to move in an African American inmate who would loudly talk all day and kick the door and scream. Because of his diabetes, Plaintiff needs to wake up at 3:00 A.M. to check his blood sugar. After Plaintiff refused these cellmates, Lopez told Plaintiff to choose his own cellmate, only to have other inmates try to move in with him. Lopez then wrote Plaintiff up for refusing these other random inmates.

Based on these allegations, Plaintiff brings a retaliation claim under the Eighth Amendment. The Court construes this as a First Amendment retaliation claim. Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Id. at 568-69.

Thus, to state a retaliation claim, the plaintiff must allege facts sufficient to show that the particular defendant engaged in adverse conduct. Id. at 567. Furthermore, the plaintiff must allege facts sufficient to show that the particular defendant was aware of the protected conduct and that the protected conduct provided that particular defendant with a retaliatory motive causing the defendant to engage in retaliatory adverse conduct; mere speculation is insufficient. Pratt v. Rowland, 65 F.3d 802, 808-09 (9th Cir. 1995). Timing may sometimes provide some

1  circumstantial evidence of retaliatory intent when adverse conduct takes place shortly after the
2  plaintiff engages in protected conduct. See Bruce v Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2000)
3  (suspect timing of adverse conduct soon after protected conduct, combined with statements by
4  defendants and evidence of pretext created triable issue of fact concerning retaliatory motive).
5  However, there must be something more than such timing to show retaliatory intent; retaliation is
6  not established simply by showing adverse activity after the occurrence of protected speech, but
7  rather a plaintiff must show a connection between the two events. Husky v. City of San Jose, 204
8  F.3d 893, 899 (9th Cir. 2000); Pratt, 65 F.3d at 808 ("suspect timing" of inmate's transfer to
9  different prison, without more, insufficient to support inference that the transfer was done in
10 retaliation for inmate's exercise of First Amendment rights).

   The Court finds that Plaintiff fails to state a First Amendment retaliation claim. Plaintiff vaguely asserts that he has faced retaliation because of his grievances, but he does not allege any specific facts to support that conclusion. Based on the allegations in the Complaint, it appears that Plaintiff has lost various privileges for repeatedly refusing to house together with various cellmates that he believed were either dangerous or talked too much. However, Plaintiff does not have a First Amendment right to choose his cellmate.

   Plaintiff does not allege any facts to support that any Defendant took adverse action against him because of his grievances. The only Defendant specifically mentioned in Count III is Lopez. Plaintiff alleges that Lopez suggested that he move in with an inmate named Duna, and falsely told Plaintiff that Duna was aware that he had a bottom bunk medical restriction. Plaintiff also alleges that Lopez later suggested that Plaintiff pick his own cellmate, but Lopez then wrote Plaintiff up for refusing to cell with random inmates who tried to move in with him. Even assuming that Lopez's actions constitute adverse action, Plaintiff does not allege any facts to support that Lopez even knew about Plaintiff's grievances, much less that he acted in retaliation for those grievances.

   The Complaint also includes allegations about Plaintiff being placed on Red Tag status. To the extent that Plaintiff is attempting to bring a First Amendment retaliation claim based on being placed on Red Tag status, he fails to state a colorable claim because he does not include any allegations to support that any of the Defendants were responsible for placing him on Red Tag

status. Plaintiff vaguely refers to John and Jane Does who have retaliated against him, but he does not allege any facts to support that his placement on Red Tag status was the result of retaliation for his grievances. To the contrary, he appears to allege that he was placed on Red Tag status for refusing cell assignments.

The Court finds that Plaintiff fails to state a colorable First Amendment retaliation claim, and the Court dismisses this claim without prejudice and with leave to amend. If Plaintiff wishes to bring this claim in any amended complaint, he must allege specific facts supporting that some Defendant took adverse action against him, and that that Defendant acted because of Plaintiff's protected conduct.

### III.  LEAVE TO AMEND

Plaintiff is granted leave to file an amended complaint to cure the deficiencies of the Complaint. If Plaintiff chooses to file an amended complaint, he is advised that an amended complaint supersedes (replaces) the original complaint and, thus, the amended complaint must be complete in itself. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); see also Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Plaintiff's amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit. Moreover, Plaintiff should file the amended complaint on this Court's approved prisoner civil rights form and it must be entitled "First Amended Complaint."

The Court notes that if Plaintiff chooses to file an amended complaint curing the deficiencies, as outlined in this order, Plaintiff will file the amended complaint within 60 days from the date of entry of this order. If Plaintiff chooses not to file an amended complaint curing the stated deficiencies, this action will be dismissed without prejudice.

///

## IV. MOTIONS

Plaintiff has filed two motions for preliminary injunctions. (ECF Nos. 1-1, 4). Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." Winter v. Natural Res. Defense Council, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

The Court has found that the Complaint does not state a colorable claim. As such, Plaintiff has not established that he is likely to succeed on the merits at this time. Accordingly, the Court denies the motions without prejudice. If Plaintiff chooses to file a first amended complaint, he may also file a renewed motion for a preliminary injunction.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that the Court accepts the Complaint (ECF No. 7) as the operative complaint in this case. Plaintiff's request for an extension to file the Complaint (ECF No. 6) is **DENIED** as moot. The Clerk of the Court will send Plaintiff a courtesy copy of the Complaint.

**IT IS FURTHER ORDERED** that the Court **DEFERS** a decision on Plaintiff's application to proceed *in forma pauperis* (ECF No. 6.)

**IT IS FURTHER ORDERED** that Plaintiff's claim of deliberate indifference to a serious medical need in Count I is **DISMISSED without prejudice and with leave to amend**.

**IT IS FURTHER ORDERED** that Plaintiff's failure to protect claim in Count II is **DISMISSED without prejudice and with leave to amend**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amendment retaliation claim in Count III is **DISMISSED without prejudice and with leave to amend**.

**IT IS FURTHER ORDERED** that Defendants Centurion Medical, NDOC and its Agents, McDaniel, Rivas, Barbara, Fontes, Quinn, Aden, Array, Hill, Smith, and Lopez, are **DISMISSED from the entirety of the case without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's motions for a preliminary injunction (ECF Nos. 1, 4) are **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that, if Plaintiff chooses to file an amended complaint curing the deficiencies of his Complaint, as outlined in this order, Plaintiff will file the amended complaint within 60 days from the date of entry of this order.

**IT IS FURTHER ORDERED** that the Clerk of the Court will send to Plaintiff the approved form for filing a § 1983 complaint and instructions for the same. If Plaintiff chooses to file an amended complaint, he should use the approved form and he will write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

**IT IS FURTHER ORDERED** that, if Plaintiff fails to file an amended complaint curing the deficiencies outlined in this order, this action will be dismissed without prejudice.

DATED: March 30, 2024

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE